# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| EVERETT CONERLY | * | CIVIL ACTION NO. 07-1858 |
| --- | --- | --- |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Everett Conerly, born April 27, 1952, filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 2, 2005, alleging disability as of December 15, 2004, due to degenerative disc disease, hepatitis C, and major depressive disorder.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Internal Consultative Examination by Dr. Misty Manuel dated March 26, 2005**. Claimant had a history of hepatitis C for three to four years, and complaints of chronic fatigue. (Tr. 66). His last job was in December, 2004 as a janitor. He reported that he could dress and feed himself without assistance; stand for 30 to 45 minutes at a time; walk on level ground for at least one block; sit for two to three hours at a time, and lift about 20 pounds. He stated that he could not drive a car. Household chores that he could do in short intervals included sweeping, mopping, and cooking.

Claimant's medications included Lorcet 10. He wore over-the-counter reading glasses. He had smoked one pack of cigarettes per day for 10 years.

On examination, claimant was 67 inches tall, and weighed 155 pounds. (Tr. 67). His blood pressure was 130/96. He ambulated normally without the use of an assistive device. He was able to get on and off the exam table and up and out of the chair without assistance.

Claimant's vision was 20/30 in the right eye and 20/25 in the left without glasses. His lungs were clear. Heart had regular rate and rhythm, and no murmurs,

rubs, or gallop. His abdomen had no evidence of distension, ascites, or hepatosplenomegaly.

On spine/extremities examination, claimant's pulses were full and equal with no evidence of edema, cyanosis, or clubbing. He had no joint swelling, redness, or effusion in the extremities. Gait and station were normal without the use of an assistive device.

Grip strength was 5/5 bilaterally with no evidence of bony deformity, muscular atrophy, or impaired range of motion in the hands. Claimant was able to perform finger to thumb, button, zip, and pick up coins.

Claimant was able to walk on his heels and toes with difficulty. (Tr. 68). He could walk heel to toe in tandem. He was able to squat halfway to the floor and recover to a standing position. He had no ulcerations or varicosities in the lower extremities.

Neurologically, claimant was alert and oriented to person, place, and time. He was cooperative and pleasant, able to follow simple directions, and had appropriate affect. His motor strength in the upper and lower extremities was 5/5 with no evidence of unilateral atrophy.

Claimant had no sensory deficits. His cerebellar exam was negative. Cranial nerves were intact grossly, and deep tendon reflexes were 2+ throughout.

Dr. Manuel's impression was a history of hepatitis C chronic infection with Interferon therapy planned, according to claimant. His abdominal examination was normal. She opined that based on claimant's examination, he should be able to sit, stand, walk, lift, hear, speak, and handle objects without limitation.

**(2) Records from W.O. Moss Regional Medical Center dated January 3, 2005 to January 8, 2007**. A needle biopsy of the liver taken on January 4, 2005, showed mild chronic hepatitis. (Tr. 69-72).

On April 21, 2005, claimant complained of low back pain. (Tr. 133). He also complained of depression. (Tr. 132). He was prescribed Lorcet. (Tr. 134).

A hepatic ultrasound taken on May 12, 2005, was negative. (Tr. 130). A pulmonary function report dated November 28, 2005, showed spirometry, lung volumes, and diffusion capacity within normal limits. (Tr. 122-23).

On May 26, 2006, claimant was seen in the emergency room for chronic pain to the back area. (Tr. 114). His gait was steady and rapid, with no limp. He was prescribed Ultracet. (Tr. 116).

On June 14, 2006, claimant complained of chronic back pain. (Tr. 112). He reported that his depression was controlled with medications.

On July 21, 2006, claimant was prescribed Interferon injections once weekly. (Tr. 141). His medications also included Amitriptyline, Ketoprofen, Hydrocodone,

Carisoprodol, and Tramadol. (Tr. 137-38).

Claimant complained of depressive moods and low back pain on September 25, 2006. (Tr. 98). He was out of all medications. He was prescribed Mobic. (Tr. 99).

On October 30, 2006, claimant had missed two to three weeks of Interferon. (Tr. 97). He had had no unexpected side effects. Compliance was stressed.

**(3) Claimant's Administrative Hearing Testimony**. At the hearing on February 9, 2007, claimant was 54 years old. (Tr. 191). He testified that he had last worked in 2004 as a janitor. (Tr. 192-93). He had worked there for at least 15 years. (Tr. 193).

Claimant reported that he could no longer work after he had a liver biopsy. (Tr. 194). He complained that he was fatigued and had back pain. He stated that he could no longer stand on his feet or do his job efficiently. (Tr. 195).

Claimant testified that he got hepatitis through a blood transfusion. (Tr. 195). He also reported that he had depression, for which he took Amitriptyline. He stated that he did not see a therapist, because the medication kept him from being depressed. (Tr. 196).

As for his hepatitis, claimant testified that he injected himself with interferon once a week, and took liver pills five times a day. He stated that he had been taking injections for almost a year.

Additionally, claimant stated that he was taking Mobic and Hydrocodone for low back pain. (Tr. 197). He reported that he had injured his back while working in California in 1984.

Regarding limitations, claimant testified that he could lift about five to 20 pounds. (Tr. 199). He stated that he could stand within an hour off and on. He reported that he could sit within an hour. He said that he could walk a block or two. Additionally, he reported that he could not stand on his feet more than 45 minutes to wash dishes, and had to take breaks. (Tr. 204).

Claimant testified that he did not drive because of his medications. (Tr. 199). He stated that he took public transportation. He reported that he had been living with his 83-year-old mother for 15 years. (Tr. 200).

As to activities, claimant testified that he dressed and groomed himself in the morning. (Tr. 201). He stated that he watched television periodically. He also prepared meals for his mother and himself. He said that he went to the store, but not on a daily basis.

Claimant reported that the side effects of his medications caused his physical limitations. (Tr. 204). He complained that the interferon made him have "flu and pneumonia" at the same time and caused terrible headaches. (Tr. 201). He testified that the Amitriptyline "knocks me out." (Tr. 202).

Additionally, claimant said that he was unable to work because of back pain. (Tr. 203). He also testified that his bad days outnumbered his good days. (Tr. 205). He said that on a bad day, he could not do anything at all. He stated that he had to lie down for half of the day on an average day. (Tr. 206).

**(4) Administrative Hearing Testimony of Charles R. Poor, Vocational Expert ("VE")**. Mr. Poor classified claimant's past work as a janitor as medium and semi-skilled. (Tr. 207). The ALJ posed a hypothetical in which he asked the VE to assume a claimant who was closely approaching advance age; had a twelfth-grade education; could lift 50 pounds occasionally and 25 pounds frequently; could sit, stand, and walk for six out of eight hours; had unlimited push/pull and gross fine motor ability; had limited ability to climb stairs, ladders, ropes, or scaffolds; had the ability to get along with others; could understand detailed instructions; could concentrate and perform detailed tasks, and could respond and adapt to workplace changes and supervision. (Tr. 207-08). In response, Mr. Poor testified that claimant could perform at least 75 percent of the janitorial jobs, but that 25 percent would be eliminated because of occasional climbing requirements. (Tr. 208).

The ALJ changed the hypothetical to assume a claimant who could lift 20 pounds occasionally and 10 pounds frequently; had the ability to understand simple instructions and to concentrate and perform simple tasks, and could respond and

7

adapt to workplace changes and supervision. In response, the VE testified that claimant could perform at least 50 percent of all janitorial jobs. (Tr. 209). He also stated that claimant could work as an equipment or vehicle cleaner, of which there were 350 jobs locally, 4,500 statewide, and 480,000 nationally; hand packer, of which there were 600 locally, 4,300 statewide and 1.1 million nationally, or food preparation worker, of which there were 1,600 locally, 21,000 statewide, and 1.2 million nationally. (Tr. 213-14).

Claimant's attorney modified the hypothetical to assume a claimant who could stand on his feet for only four hours in an eight-hour workday. (Tr. 210). In response, Mr. Poor testified that claimant could not do any of his past relevant work. When claimant's attorney modified the hypothetical to assume a claimant who was 30 percent less productive than an average individual due to fatigue, flu-like symptoms, or lower back pain, the VE stated that such claimant would not be able to maintain competitive employment.

Additionally, the attorney posed a hypothetical to assume a claimant who had to take an additional five-minute break every hour due to fatigue or the side effects of drugs, as well as being 30 percent less productive than an average employee. (Tr. 210-11). In response, Mr. Poor stated that such claimant would not be a competitive worker. (Tr. 211). He also asked the VE to assume that claimant had to miss work

8

two to three times a month because he could not get out of bed. (Tr. 213). Mr. Poor responded that three times was right on the dividing line, but that four times a month rendered him unemployable.

**(5) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ improperly evaluated the effects of his medication pursuant to 20 C.F.R. § 404.1529(c) and SSR 96-7p, and (2) the ALJ mechanically applied the age categories in a borderline situation.

As to the first argument, claimant asserts that the ALJ failed to properly consider the side effects of his medications. At the hearing, claimant complained that the side effects of his medications caused his physical limitations. (Tr. 204). He reported that the interferon made him have "flu and pneumonia" at the same time and caused terrible headaches. (Tr. 201). He further testified that the Amitriptyline "knocks me out." (Tr. 202).

However, the record does not indicate that claimant reported these side effects to his physicians. *See Salazar v. Chater*, 1995 WL 783347, *5 (5th Cir. 1995) ("[i]t is logical to assume that if the claimant were suffering significantly from any side affects [sic], the claimant would have complained to his treating physician, yet he has not done so."). Additionally, the decision reflects that the ALJ specifically

9

considered the effects of claimant's medications in evaluating his complaints. (Tr. 18).

Further, the record reflects that claimant failed to comply with his medical treatment. Doctors noted that claimant had missed two to three weeks of Interferon, for which they stressed compliance. (Tr. 97). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

Claimant's primary argument seems to be that the side effects of his interferon treatments render him disabled. (Tr. 203 and Plaintiff's Brief, p.7). However, there is absolutely no medical support for that position in this record. Thus, this argument lacks merit.

Next, claimant argues that the ALJ "mechanically applied" the age categories in his borderline situation. [rec. doc. 14, p. 8]. 20 C.F.R. § 404.1563(a) requires that the age classifications not be applied mechanically in borderline situations; however, "borderline" is not specifically defined, indicating that the Commissioner has discretion in determining when a situation is "borderline." *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir.1988); *Stanridge-Salazar v. Massanari*, 254 F.3d 70 (5th Cir. 2001).

Here, the record reflects that the ALJ specifically considered the fact that claimant was "closely approaching advanced age" in the hypothetical to the vocational expert, as well as in the decision. (Tr. 20-21, 207). Additionally, he considered claimant's age and limitations in the hypotheticals to the vocational expert, who determined that claimant could perform his past relevant work, as well as several other light jobs, including equipment and vehicle cleaner, hand packer, and food preparation worker. (Tr. 21, 208-10). Accordingly, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE**

TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed at Lafayette, Louisiana, November 5, 2008.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE